Richard C. Norton, Esq. (SBN. 135024)
NORTON MOORE & ADAMS, LLP
501 West Broadway, Suite 800
San Diego, California 92101
Telephone: (619) 233-8200
Facsimile: (619) 393-0461

Attorneys for Plaintiff, Gerald H. Davis, Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | CASE NO. 17-04050-LA7 |
| ROBERT DUANE RENS, | |
| Debtor. | |
| | Adversary No.  19-90067-LA7 |
| GERALD H. DAVIS, TRUSTEE | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION OF ISSUES NOT IN DISPUTE** |
| Plaintiff, | |
| v. | |
| CHERI LEE HUBKA SPARHAWK, as Trustee of the Trust Agreement of Elmer Rens and Jeanne Rens, dated January 6, 1977, also known as theElmer and Jeanne Rens Trust; ROBERT DUANE RENS, an individual; | Date:   April 2, 2020 Time:   2:00 p.m. Dept.:  Two Honorable Louise D. Adler |
| Defendants. | |

///

///

///

BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

SUMMARY OF CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      A.    IN 1977, THE RENS FAMILY TRUST WAS FORMED. . . . . . . . . . . . 3

      B.    IN 1980 AND 1981, CERTAIN REAL PROPERTY WAS
           TRANSFERRED TO THE RENS FAMILY TRUST.. . . . . . . . . . . . . 3

      C.    ADVANCEMENTS OF OVER $600,000 WERE REPAID BY MR.
           RENS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      D.    THE THIRD AMENDMENT PROVIDES FOR THE DISTRIBUTION OF
           TRUST INCOME UNTIL THE TERMINATION OF THE GROUND
           LEASE ON JULY 31, 2035. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      E.    THE THIRD AMENDMENT OF THE RENS FAMILY TRUST
           PROVIDED FOR SPENDTHRIFT TRUST RESTRICTIONS. . . . . . . . 6

      F.    ON JULY 31, 2035, THE RENS FAMILY TRUST WILL TERMINATE,
           AND THE TRUST PROPERTY WILL BE DISTRIBUTED TO THE
           BENEFICIARIES FREE OF TRUST.. . . . . . . . . . . . . . . . . . . . . . . . 6

      G.    IN 1999, THE RENS FAMILY TRUST BECAME IRREVOCABLE
           UPON THE DEATH OF THE SURVIVING TRUSTOR. . . . . . . . . . . 7

      H.    MR. RENS CONTINUED TO RECEIVE HIS MONTHLY TRUST
           INCOME DISTRIBUTIONS AFTER HE FILED HIS CHAPTER 7
           PETITION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      I.    MR. RENS INFLATED HIS MONTHLY EXPENSES BY ADDING A
           FALSE RENT CHARGE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      A.    SUMMARY JUDGMENT IS APPROPRIATE. . . . . . . . . . . . . . . . . . 12

      B.    CALIFORNIA PROBATE CODE SECTIONS. . . . . . . . . . . . . . . . . . 12

      C.    TRUST INTERESTS WHICH ARE CONTINGENT ON "SURVIVAL"
           ARE PROPERTY OF THE BANKRUPTCY ESTATE. . . . . . . . . . . . 14

D.    UNDER SECTION 541(c), 25% OF DEBTOR'S INTEREST IN THE TRUST DOES NOT ENJOY SPENDTHRIFT STATUS.  . . . . . . . . . . 16

E.    25% OF DEBTOR'S SHARE OF TRUST INCOME DOES NOT IMPAIR AMOUNTS NECESSARY FOR SUPPORT OF DEBTOR AND SPOUSE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

CONCLUSION   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

# TABLE OF AUTHORITIES

Page

**Cases:**

Anderson v. Libery Lobby,
477 U.S. 242, 247-48 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Celotex Corp. V. Catrett
477 U.S. 317, 325 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Chatard v. Oveross
179 Cal. App. 4th 1098 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Carmack v. Reynolds
2 Cal. 5th 844 (2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

In re Hernandez
Bankr. Lexis 4670, 17 (9th Cir. B.A.P. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

 Kelly v. Kelly
11 Cal. 2d 356 (1938) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

In re Kim
  257 B.R. 680 (9th Cir.B.A.P. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15,17

Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,
  475 U.S. 574, 586 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

In re Neutron
922 F. 2d 1379,1382 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,14,16,17

In re Reynolds
 479 B.R. 67 (9th Cir.B.A.P. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

In re Ryerson
 739 F.2d 1423, 1425 (9th Cir.1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Segal v. Rochelle
 382 U.S. 375,379 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**Title 11, United States Code**:

§ 541(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,2,14,22,23

§ 541(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

§ 541(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

§ 541(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,17

§ 544(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**Federal Rules of Civil Procedure:**

Rule 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**California Civil Code:**

§ 703.140 (b)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

§ 709.010 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13,

**California Probate Code:**

§ 15300 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12,13,16

§ 15301 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13,16

§ 15301 (a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

§ 15306.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13,15,16,17

§ 15306.5 (a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

§ 15306.5 (b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

§ 15306.5 (c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## SUMMARY

Under the subject spendthrift trust (the "Rens Family Trust") , the debtor, Robert Duane Rens ("Mr. Rens" and/or "debtor"), is entitled to receive (1) monthly disbursements of one-third (1/3) of the trust income until the "trust termination date," and (2) one-third (1/3) of the trust property on the "trust termination date."  Under the trust agreement, the disbursements to the beneficiaries, including Mr. Rens, are mandatory and not discretionary.

The Rens Family Trust owns a one-half interest in certain commercial property located on Miramar Road, San Diego (the "Trust Property"), which generates significant monthly rental income under a ground lease that expires on July 31, 2035 (the "ground lease").  Under the terms of the trust agreement, the Rens Family Trust will automatically terminate upon the expiration of the ground lease on July 31, 2035 (the "Trust Termination Date"), at which time Ms. Sparhawk, as the trustee, will distribute the trust property to the beneficiaries.

Although the Rens Family Trust is a spendthrift trust, under §15306.5 of the California Probate Code, the Chapter 7 trustee is entitled to receive 25% of the debtor's share of the monthly trust income payments, and 25% of the debtor's share of the trust property to be distributed on the Trust Termination Date, subject to the amount necessary for the debtor's support.  Accordingly, as a matter of law, 25% of the debtor's share of the trust income and trust property is property of the bankruptcy estate under §541(a)  in that said portion "is not excluded from the estate pursuant to 11 U.S.C. §541(c)(2)."  (In re Neuton, 922 F.2d 1379, 1383 (9th Cir. 1990).)

Lastly, the debtor's income exceeds his expenses necessary for the support of the debtor and his wife.  Mr. Rens and his wife live in their daughter's property located in La Jolla rent free. It is undisputed that after the monthly expenses of the debtor and his wife are paid, there is sufficient monthly income remaining to pay the bankruptcy estate its 25% portion of the trust income payments.

All material facts in support of the trustee's motion are undisputed in that they arise from the documents turned over by the defendants, written admissions of the defendants, or from the testimony provided by the defendants.  Therefore, as a matter of law, the Chapter 7 Trustee is entitled to the following relief as set forth in the complaint:

BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

First Claim for Relief

    A judicial declaration (relating to the Trust Income Distributions) as follows:

    (A)    Twenty five percent ( 25%) of the Debtor's share of the Trust Income Distributions from the Rens Family Trust which have accrued, and will accrue in the future, beginning from the date of the bankruptcy petition until the Rens Family Trust terminates on July 31, 2035, is property of the bankruptcy estate under 11 U.S.C., §541(a).

Second Claim for Relief:

    A judicial declaration (relating to the Trust Property) as follows:

    (A)    Twenty five percent (25%) of the Debtor's share in the Trust Property of the Rens Family Trust, also known as the Miramar Park Property, is property of the bankruptcy estate under 11 U.S.C., § 541(a).

    (B)    On July 31, 2035, the Trust Termination Date, the bankruptcy estate is entitled receive 25% of the Debtor's share in the distribution of the Trust Property.

Third Claim for Relief:

    An order directing the debtor, Mr. Rens, to turnover the following:

    (A)    The Trust Income Disbursements, to the extent constituting property of the estate that is beyond the debtor's claimed exemption amount, which have been paid to the debtor, Mr. Rens, beginning from the date of the bankruptcy petition until the date of judgment in this case.

Fourth Claim for Relief:

    An order directing the defendant, Ms. Sparhawk, to turnover and/or pay the following:

    (A)    Twenty five percent (25% ) of the debtor's share in the Trust Income Disbursements which are due and paid in the future under the trust agreement, beginning from the date of said order, and continuing until the Trust Termination Date.

    (B)    Twenty five percent (25%) of the debtor's share in the distribution of the Trust Property due upon the Trust Termination Date.

# FACTUAL BACKGROUND

**A.**     **IN 1977, THE THE RENS FAMILY TRUST WAS FORMED.**

On or about January 6, 1977, Elmer Everett Rens and Jeanne Louise Rens (hereinafter the "Rens Parents"), created the Trust of Elmer Everett Rens and Jeanne Louise naming themselves as the Trustors and the Trustees of said trust (the "Trust Agreement"). ("Undisputed Fact No. 1.")

**B.**     **IN 1980 AND 1981, CERTAIN REAL PROPERTY WAS TRANSFERRED TO THE RENS FAMILY TRUST.**

On August 1, 1980, the Rens Parents, as Trustees under the Trust Agreement, and Verne R. Hubka and Corinne V. Hubka (collectively the "Landlords"), on the one hand, and Jeffrey B. Davis (the "Tenant"), on the other hand, entered into a Ground Lease concerning certain real property, for a period of 55 years, commencing from August 1, 1980, and ending at midnight on July 31, 2035 (hereinafter the "Ground Lease"). ("Undisputed Fact No.3".)

On August 1, 1980, Jeffrey B. Davis and his wife, Katherine L. Davis ("Sub-Landlords"), and McKellar Development Corporation entered into a Sublease Agreement for a period of 55 years, commencing from August 1, 1980, and ending at midnight on July 31, 2035. ("Undisputed Fact No. 4".)  McKellar Development constructed buildings on the land which are now being leased and constitute the sole income for the trust.

In September 1980, the Trustors and the tenants agreed that during the last 2 years of the Sublease, the Rens Family Trust would be entitled to collect the lease payments under the Sublease directly from the Subtenants which will increase the monthly rental amounts collected by the trust.  ("Undisputed Fact No. 5".)  (Currently the subtenants are paying approximately $7,000 more in monthly rent under the sublease than the tenants are paying the Rens Family Trust under the Ground Lease.)

On or about July 21, 1981, the Trust Agreement was amended, adding the one-half interest in the subject real property owned by the Rens Parents (hereinafter the "Trust Property")

to the trust which is "subject to a long-term lease" (the "First Amendment").  ("Undisputed Fact No. 6.")

The Trust Property of the Rens Family Trust consists of an undivided one-half interest in the following real property:

> Lot 1, Miramar Business and Industrial Park, in the City of San Diego, County of San Diego, State of California, according to Map thereof No. 9715, filed in the Office of the County Recorder of San Diego County, July 15, 1980 with a Property address: 7550-7590 Miramar Road, San Diego, CA 92126; and an Assessors Parcel Number: 343-081-10 (hereafter "Miramar Business and Industrial Park II or "Miramar Park") is an asset of Trust A.

(Hereinafter the "Trust Property" or the "Miramar Park Property.")  ("Undisputed Fact No.7.")

On or about July 30, 1985, the Trust Agreement was amended for the second time (the "Second Amendment").  ("Undisputed Fact No. 8.")

## C.    ADVANCEMENTS OF OVER $600,000 WERE REPAID BY MR. RENS.

All advancements taken from the trust by Mr. Rens have been repaid and the obligation is satisfied.  The terms and conditions of the Rens Family Trust provide that the distribution of Debtor's share of the Trust Property shall be subject to certain advances made to the Debtor in the amount of $600,000 which had been received by the Debtor during his lifetime. ("Undisputed Fact No.12.")  Mr. Rens actually received advancements from the Rens Family Trust in a sum of $729,550.77 prior to the death of Elmer E. Rens in January 1999 (hereinafter the "Debtor's Advancements"). ("Undisputed Fact No. 13.")

The Trustee recently discovered that as of November 1, 2011, the total offset balance owed by Mr. Rens for Debtor's Advancements was satisfied in full and no amounts are owed by Mr. Rens for any advancements of loans under the Rens Family Trust.  ("Undisputed Fact No.14.")  Consequently, nothing is owed by Mr. Rens for these advancements and/or loans.[1]

---

[1] The document "Confirmation of Satisfaction in Full of Advancements to Robert D. Rens" and its contents were revealed to the trustee's counsel for the first time on January 13, 2020.

BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**D.    THE THIRD AMENDMENT PROVIDES FOR THE DISTRIBUTION OF TRUST INCOME UNTIL THE TERMINATION OF THE GROUND LEASE ON JULY 31, 2035.**

On or about May 27, 1998, the Trust Agreement was amended for the third and final time (the "Third Amendment") (collectively the Trust Agreement and three amendments thereto are collectively referred to as the "Rens Family Trust"). ("Undisputed Fact No.10.")  The Third Amendment is the operative document from which the current successor Trustee of the Rens Family Trust, Ms. Sparhawk, works as the trustee. ("Undisputed Fact No. 11.") [2]

The Trust Property was, and is, subject to the Ground Lease which terminates on July 31, 2035, and is described in the Rens Family Trust as follows:

> The Miramar Park trust asset is subject to a long term Ground Lease dated September 1, 1978; First Amended August 1, 1980; Second Amended August 15, 1992, Third Amended January 8, 1997, which lease naturally terminates in the year 2035.

(Hereinafter the "Ground Lease.")  ("Undisputed Fact No. 15.")

Under the Rens Family Trust, all distributions of income are distributed equally to the beneficiaries of the trust who were the three (3) children of the Rens Parents, (1) Corinne V. (Rens) Hubka, (2) Lee E. Rens and (3) the debtor, Robert D. Rens (collectively the "Beneficiaries").  ("Undisputed Fact No. 16.")

The Rens Family Trust provides that the income arising from the Ground Lease would be distributed equally to the three Beneficiaries (the "Trust Income Distribution") until the natural termination of the Ground Lease on July 31, 2035, described as follows:

> I direct the Trustee to distribute income from the Ground Lease to Miramar Park to (1) CORINNE V. (RENS) HUBKA, (2) LEE E. RENS, and (3) ROBERT D. RENS, or the living issue of a deceased child by right of representation, in equal shares, share and share alike.  Notwithstanding any provisions to the contrary, the principal of Miramar Park shall not be distributed until the natural termination of the Ground Lease.

("Undisputed Fact No.17.")

---

[2/] As of April 29, 2013, defendant, Cheri L. Hubka Sparhawk, became the Successor Trustee of the Rens Family Trust.  ("Undisputed Fact No. 27.")

BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Monthly Trust Income Distributions are automatically made to Mr. Rens who never has to make written or verbal requests for the distributions. ("Undisputed Fact No. 18.")

The trustee, Ms. Sparhawk, has no discretion to deny making a Trust Income Distribution or disbursement of the Trust Property to Mr. Rens under the terms of the Rens Family Trust. ("Undisputed Fact No. 19.")

**E.     THE THIRD AMENDMENT OF THE THE RENS FAMILY TRUST PROVIDED FOR SPENDTHRIFT TRUST RESTRICTIONS.**

The trust income and trust property of the Rens Family Trust are subject to a spendthrift provision in the Third Amendment.  The Rens Family Trust provides that "[n]o income beneficiary shall anticipate, assign, alienate, or encumber the title, principal or income of Trust assets, particularly Miramar Park, voluntarily or involuntarily, nor subject any of the Trust assets to creditor's claims, liability, attachment, execution, or process of law."" ("Undisputed Fact No. 20.")

**F.     ON JULY 31, 2035, THE RENS FAMILY TRUST WILL TERMINATE, AND THE TRUST PROPERTY WILL BE DISTRIBUTED TO THE BENEFICIARIES FREE OF TRUST.**

The Rens Family Trust will terminate on the natural termination date of the Ground Lease, which is July 31, 2035 (the "Trust Termination Date"). ("Undisputed Fact No. 21.")

Upon the termination of the Rens Family Trust on July 31, 2035, the Trust Property "shall be distributed, free of trust, to  (1) Corinne V. (Rens) Hubka, (2) Lee E. Rens, and (3) Robert D. Rens, or the living issue of a deceased child, by right of representation, in equal shares, share and share alike."  ("Undisputed Fact No. 22.")

Accordingly, upon termination of the Rens Family Trust on July 31, 2035, one third (1/3) of the Trust Property will be distributed outright, free of trust, to Mr. Rens, or to his issue if he is deceased at that time.  ("Undisputed Fact No. 23.")  The termination of the Ground Lease or the Rens Family Trust will occur on July cannot be delayed or extended under the terms of the trust.

The trustee, Ms. Sparhawk, has no authority to extend the termination date of the Ground Lease under the terms of the Rens Family Trust.  ("Undisputed Fact No. 24.") [3]

**G.      IN 1999, THE RENS FAMILY TRUST BECAME IRREVOCABLE UPON THE DEATH OF THE SURVIVING TRUSTOR.**

The trust becomes irrevocable upon the death of the surviving Trustor at which time the trust may not be altered, amended or revoked by any person.  ("Undisputed Fact No. 2.")  Trustor, Jeanne Louise Rens, died in March 1986.  ("Undisputed Fact No. 9.")  The Rens Family Trust became irrevocable upon the death of surviving Trustor, Elmer Everett Rens, on January 26, 1999.  ("Undisputed Fact No. 25.")

Therefore, the Rens Family Trust has been irrevocable and all rights thereunder vested since 1999.

**H.      MR. RENS CONTINUED TO RECEIVE HIS MONTHLY TRUST INCOME DISTRIBUTIONS AFTER HE FILED HIS CHAPTER 7 PETITION.**

On July 4, 2017, Mr. Rens filed his Chapter 7 bankruptcy petition in In re Robert Duane Rens, Case No. 17-04050-LA7.  ("Undisputed Fact No. 28.")

As of the date of the Rens bankruptcy petition, the Rens Family Trust had two assets (1) the Trust Property, aka the Miramar Park Property, encumbered by a long term commercial lease; and (2) a trust account at Citibank.  ("Undisputed Fact No. 29.")

On July 18, 2017, the debtor filed his bankruptcy schedules and statement of financial affairs (hereinafter the "Bankruptcy Schedules").  ("Undisputed Fact No. 30.")  Under Schedule C of the Bankruptcy Schedules, the debtor claims an exemption of $28,225.00 under C.C.P., Section 703.140(b)(5).

---

[3] For purposes of the relief sought under this motion, the value of the Trust Property on the Trust Termination Date (2035) is unknown and not material.  However, it appears the value will be significant in that as of the death of Corinne V. Rens Hubka, (May 2004), a one-half interest of the subject property was appraised and valued at $1,021,000. ("Undisputed Fact No. 26.")

As mentioned earlier, the Trust Income Distributions come from rent payments received from sublessee, Katherine Davis. ("Undisputed Fact No. 31.")

The following are the amounts collected by the Rens Family Trust for lease of the Trust Property:

| | |
|---|---|
| 2013 | $ 12,547.89/month |
| 2014 | $ 12,547.89/month |
| 2015 | $ 12,547.89/month; until August 2015, increase to $ 13,148.76/month |
| 2016 | $ 13,148.76/month |
| 2017 | $ 13,148. 76/month |
| 2018 | $ 13,148. 76/month; until August 2018, increase to $14,156.80/month |
| 2019 | $ 14,156.80/month. |

("Undisputed Fact No. 32.")  The lease payments under the Ground Lease Agreement are increased every three years for CPI adjustment.  ("Undisputed Fact No. 33.")

Before making the Trust Income Distributions to the beneficiaries, trustee, Ms. Sparhawk, deducts administrative expenses and her monthly trustee fee of approximately $500. ("Undisputed Fact No. 34.")

The debtor, Mr. Rens, received the following Trust Income Distributions from the Rens Family Trust in 2017, after the bankruptcy petition was filed on July 4, 2017:

| | | |
|---|---|---|
| 07/10/17 | $3,941.25 | (July 2017 Dist) |
| 08/08/17 | $4,078.75 | (Aug 2017 Dist) |
| 09/08/17 | $4,049.59 | (Sept 2017 Dist) |
| 10/10/17 | $4,182.92 | (Oct 2017 Dist) |
| 11/07/17 | $4,216.25 | (Nov 2017 Dist) |
| 12/06/17 | $4,216.25 | (Dec 2017 Dist) |
| Total: | $24,685.01 | |

("Undisputed Fact No. 35.")

The debtor, Mr. Rens, received the following Trust Income Distributions from the Rens Family Trust in 2018:

| | | |
|---|---|---|
| 1/3/18 | $4,216.25 | (Jan 2018 Dist) |
| 1/3/18 | $ 412.50 | (Jan  2018 Adj) |
| 2/6/18 | $4,216.25 | (Feb 2018 Dist) |
| 3/7/18 | $4,096.25 | (Mar 2018 Dist) |
| 4/6/18 | $3,922.92 | (Apr 2018 Dist) |

| | | |
|---|---|---|
| 5/8/18 | $4,216.25 | (May 2018 Dist) |
| 6/8/18 | $4,216.25 | (Jun 2018 Dist) |
| 7/5/18 | $4,016.25 | (Jul 2018 Dist) |
| 8/1/18 | $4,116.25 | (Aug 2018 Dist) |
| 9/5/18 | $5,188.29 | (Sept 2018 Dist) |
| 10/5/18 | $4,552.27 | (Oct 2018 Dist) |
| 11 /8/18 | $4,452.27 | (Nov 2018 Dist) |
| 12/6/18 | $4,652.27 | (Dec 2018 Dist) |
| Total: | $52,274.27 | |

("Undisputed Fact No. 36.")

The debtor, Mr. Rens, received the following Trust Income Distributions from the Rens Family Trust in 2019:

| | | |
|---|---|---|
| 1/3/19 | $4,552.26 | (Jan 2019 Dist) |
| 2/6/19 | $4,552.27 | (Feb 2019 Dist) |
| 3/6/19 | $4,552.27 | (Mar 2019 Dist) |
| 4/5/19 | $3,109.77 | (Apr 2019 Dist) |
| 5/3/19 | $4,052.26 | (May 2019 Dist) |
| 6/6/19 | $4,027.27 | (Jun 2019 Dist) |
| 7 /5/19 | $4,052.26 | (Jul 2019 Dist) |
| 8/14/19 | $4,032.27 | (Aug 2019 Dist) |
| 9/6/19 | $4,147.27 | (Sept 2019 Dist) |
| 10/9/19 | $4,552.27 | (Oct 2019 Dist) |
| 11/8/19 | $4,552.27 | (Nov 2019 Dist) |
| 12/10/19 | $4,552.27 | (Dec 2019 Dist) |
| Total: | $50,734.72 | |

("Undisputed Fact No. 37.")

In addition to the Trust Income Distributions from the Rens Family Trust, the debtor also received monthly social security benefits as follows:

| | |
|---|---|
| 2017: | $1,652.90/month |
| 2018: | $1,691.00/month |
| 2019: | $1,742.00/month |

("Undisputed Fact No. 38.")

BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## I.    MR. RENS INFLATED HIS MONTHLY EXPENSES BY ADDING A FALSE RENT CHARGE.

According to Schedule J of the Bankruptcy Schedules filed on July 18, 2017, the average monthly expenses of the debtor, Mr. Rens, were:

| | |
|---|---|
| Rent | $2,000.00[4] |
| Electricity/Gas | $   250.00 |
| Telephone | $   305.00 |
| Food | $   345.00 |
| Clothing, laundry | $   120.00 |
| Personal care | $     90.00 |
| Medical/Dental | $   220.00 |
| Transportation | $   200.00 |
| Entertainment | $   100.00 |
| Vehicle insurance | $   147.00 |
| Tax withholding | $   300.00 |
| Support to Spouse | $1,500.00 |
| Medicare | $   108.05 |
| Total: | $5,685.05 |

("Undisputed Fact No. 39.")

In September 2017, Mr. Rens moved into the residence of his estranged wife, Sydney Rens, which increased the average monthly expenses for the debtor and his wife as follows:

| | |
|---|---|
| Rent | $2,500.00[5] |
| Electricity/Gas | $   150.00 |
| Cable/Internet | $   220.00 |
| Mobile phones | $   148.00 |
| Food | $   850.00 |
| Supplemental Health Insurance | $   200.00 |
| Medications | $   600.00 |
| Vehicle gasoline and maintenance | $   300.00 |
| Automobile/renter's insurance | $   300.00 |
| Income tax reserve | $   250.00 |

---

[4] Mr. Rens admitted in his deposition that the above rent expense stated in his bankruptcy schedules filed with this bankruptcy court was false. Mr. Rens has had no rent expense since 2016.

[5] Mr. Rens admitted in his deposition that this rent expense stated in his responses to interrogatories is also false. Since September 2017, Mr. Rens and his wife live rent free in their daughter's property in La Jolla.

BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Credit Card payments $   180.00
Clothing, laundry,
grooming expense     <u>$   150.00</u>

      Total:         $5,848.00

("Undisputed Fact No. 40.")

      In 2016, Mr. Rens split from living with his former girlfriend and began living in a back office at the place of business of two of his children on Vickers Street, San Diego. ("Undisputed Fact No. 41.")   While living at the offices at Vickers Street, Mr Rens was not charged rent and paid no rent. ("Undisputed Fact No. 42.")

      In July or September 2017, Mr. Rens moved into the residence of his estranged wife, Sydney Rens, who lives in a residence owned by their daughter on Draper Avenue, La Jolla, California. ("Undisputed Fact No. 43.")   In fact, neither Mr. Rens nor Sydney Rens is charged rent for living at the Draper Avenue property. ("Undisputed Fact No. 44.")

      The Schedule J on the debtor's Bankruptcy Schedules is inaccurate in that the $2,000 rent expense did not actually exist. ("Undisputed Fact No. 45.") [6]

      The true amount of monthly expenses listed on the Bankruptcy Schedules was $3,685.05, after deducting the non-existent rent expense of $2,000, not $5,685.05. ("Undisputed Fact No. 46.")

      The average monthly expenses for the period after Mr. Rens moved into his estranged wife's residence is inaccurate in that the $2,500 rent expense did not actually exist. ("Undisputed Fact No. 47.")   Thus, Mr. Rens admitted in his deposition that he made another false sworn statement about the phony rent expenses in his attempt to inflate his monthly expenses.   In response to Interrogatory Nos. 22 and 23, Mr. Rens falsely stated that he was paying $2,500 in rental expenses.   (See Exhibit "13" to Norton Declaration.)

///

---

[6] This is just one of several material misrepresentations and concealments discovered by the trustee during this bankruptcy proceeding.   Debtor also concealed the bank account at Citibank that he used to collect his trust income payments and then immediately converted the trust payments into large sums of cash.   This account was opened approximately 3 months before the bankruptcy petition.

    BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## LEGAL ARGUMENT

### A.    SUMMARY JUDGMENT IS APPROPRIATE.

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment shall be rendered forthwith if the pleadings and discovery show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  The United States Supreme Court explained the following:

> By its very terms [Rule 56(c)] provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.

(Emphasis in original.)  Anderson v. Liberty Lobby, 477 U.S. 242, 247-48 (1986).

To prevail in a summary judgment motion, the moving party need not negate the non-moving party's case; it may discharge its burden by showing there is an absence of evidence to support the non-moving party's case.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Thereafter, the non-moving party must do more than show there is some metaphysical dispute as to the material facts.  Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Further, "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no `genuine issue for trial'."  Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. at 574.

### B.    CALIFORNIA PROBATE CODE SECTIONS.

In California, a spendthrift provision protects the beneficiary's income and principal interests only so "long as the income or principal is properly held" in the trust.  Chatard v. Oveross (2009) 179 Cal. App. 4th 1098.  After the amount is paid to the beneficiary, creditors may reach it.  Kelly v. Kelly (1938) 11 Cal. 2d 356; see also Cal. Prob. Code §§ 15300, 15301(a).[7]

---

[7] All references to code sections shall refer to the California Probate Code unless stated otherwise.

BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Notwithstanding the validity of spendthrift trusts, the California Probate Code allows the Chapter 7 trustee in a bankruptcy proceeding to recover any payments owed to the debtor who is a beneficiary to a spendthrift trust subject to two limitations: (1) the estate may not receive more than 25% of the debtor's interest in the trust "income" and trust "property" from a spendthrift trust; and (2) the estate may not receive "any amount that the court determines is necessary for the support of the beneficiary and all the person the beneficiary is required to support."

Under Section 15306.5, the court is authorized to make an order directing the trustee of a spendthrift trust to pay a judgment creditor out of any payment which the beneficiary is entitled to receive under the trust instrument:

> (a)    Notwithstanding a restraint on transfer of the beneficiary's interest in the trust under Section 15300 or 15301, and subject to the limitations of this section, upon a judgment creditor's petition under Section 709.010 of the Code of Civil Procedure, the court may make an order directing the trustee to satisfy all or part of the judgment out of the payments to which the beneficiary is entitled under the trust instrument or that the trustee, in the exercise of the trustee's discretion, has determined or determines in the future to pay to the beneficiary.

(Section 15306.5(a).)  However, the court may not require the trustee of the trust to pay more than 25% of the payment owed to the beneficiary under the spendthrift trust:

> (b)    An order under this section may not require that the trustee pay in satisfaction of the judgment an amount exceeding 25 percent of the payment that otherwise would be made to, or for the benefit of, the beneficiary.

(Section 15306.5(b).)  Lastly, the court may not require the trustee of a spendthrift trust to pay any amounts necessary for the support of the beneficiary or person the beneficiary is required to support, stated as follows:

> (c)    An order under this section may not require that the trustee pay in satisfaction of the judgment any amount that the court determines is necessary for the support of the beneficiary and all the persons the beneficiary is required to support.

(Section 15306.5(c).)

## C.    TRUST INTERESTS WHICH ARE CONTINGENT ON "SURVIVAL" ARE PROPERTY OF THE BANKRUPTCY ESTATE.

Under the Bankruptcy Code, the bankrupt estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Additionally, under § 541(a), "contingent interests are part of the bankruptcy estate." In re Neuton, 922 F.2d 1379, 1382 (9th Cir. 1990).

In Neuton, the Ninth Circuit was confronted with a similar trust provision and factual circumstances nearly identical to the instant case. For example, the provisions of the trust required the trustee to pay the mother, Eleanor, a share of trust income during her lifetime, and a share of her trust income to her living children after her death. Neuton, at 1381. Eleanor died approximately one month after a bankruptcy petition was filed by her son. Id.

In Neuton, the debtor's interest in the spendthrift trust at the time of the bankruptcy petition was found to be property of the estate and described as follows:

**The right to receive a share of income from the trust upon the death of [the mother]** *if the debtor survived the mother*.

In holding that this right to income was property of the estate, the Ninth Circuit agreed with the BAP that "[b]ecause debtor's right to receive trust income or corpus was predicated on surviving Eleanor and/or others, under California law debtor had contingent interests . . . [which] became property of the estate under section 541(a)(1)." Id. at 1382. The Neuton court explained that "[i]n a landmark decision which largely inspired the new Code, the Supreme Court held that 'the term 'property' has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed.'" Id., citing Segal v. Rochelle, 382 U.S. 375, 379 (1966). "Accordingly, contingent interests of the type at issue in this case typically have been held to be property of the bankrupt estate. For example, in In re Ryerson, this court affirmed the BAP's holding that money to which the debtor became entitled eight months after filing for bankruptcy should be included in the estate, notwithstanding the fact that at the time of filing the debtor had an unvested, contingent interest. 739 F.2d 1423, 1425 (9th Cir. 1984). . . ." Id. at 1382.

The B.A.P. has also held that the Neuton holding applies equally to a debtor's contingent interest in trust principal as well as trust income from a spendthrift trust. In re Hernandez, Bankr. Lexis 4670, *17 (9th Cir. B.A.P. 2013), see also In re Kim, 257 B.R. 680 (9th Cir. B.A.P. 2000), In re Reynolds, 479 B.R. 67 (9th Cir. B.A.P. 2012).

In Hernandez, as of the date of the debtors' bankruptcy filing, Ms. Hernandez was a named beneficiary of an irrevocable spendthrift trust, established by her mother as settlor under a certain trust agreement. Ms. Hernandez's beneficial interest in the Trust was (and is) contingent, in that under Article Three, Section B of the Trust Agreement, ***Ms. Hernandez would have to survive her mother in order to receive a mandatory distribution of Trust principal***. Ms. Hernandez's mother was living on the petition date and was still living throughout the period relevant to this appeal.[8] Hernandez, at *2.

The B.A.P. concluded that 25% of the debtor's contingent future interest in the trust principal of the irrevocable spendthrift trust was property of the estate. As the Hernandez court explained, "in Kim, this Panel followed the Neuton interpretation of C.P.C. § 15306.5 in a context involving the principal, rather than income, of a spendthrift trust." Hernandez, at *19. "The bankruptcy court, applying section 15306.5 and following [Neuton], held that only 75% of the spendthrift trust was excluded from the estate." Hernandez, at *19, citing Kim, at 683 n.4.

In Reynolds, the trust provided that the debtor, Reynolds, would be entitled to receive distributions of the trust property, but only if he survived his father by thirty days. The debtor's father died one day before the bankruptcy petition was filed. Citing Neuton, the B.A.P. in the Reynolds case, concluded that under § 15306.5, the estate could claim up to 25% of the debtor beneficiary's interest in the trust property of the subject spendthrift trust. Reynolds, at 71.

In Carmack v. Reynolds, (2017) 2 Cal. 5th 844, the California Supreme Court concluded that a bankruptcy trustee, standing as a hypothetical judgment creditor, can reach a beneficiary's interest in a trust that pays entirely out of principal in two ways:

---

[8]/

The Hernandez contingency requiring her to survive beyond her mother's death is identical to the instant case in that Mr. Rens also must survive beyond the lease termination date in order to receive a mandatory distribution of his share of the trust property.

BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

First, the court held that the bankruptcy trustee "may reach up to the full amount of any distributions of principal that are currently due and payable to the beneficiary, unless the trust instrument specifies that those distributions are for the beneficiary's support or education and the beneficiary needs those distributions for either purpose." Id. at 857.

Second, "the bankruptcy trustee can reach up to 25 percent of any *anticipated payments* made to, or for the benefit of, the beneficiary, reduced to the extent necessary by the support needs of the beneficiary and any dependents." Id. at 857.

In this case, the Rens Family Trust pays distributions out of income and principal. The fact that Mr. Rens must survive, or be alive, in order to receive each future income distribution payment, or to receive the distribution of trust property upon the termination of the trust, does not change the status of such rights being property of the estate to the extent of 25% of such amounts. Such contingent future rights relating to the Rens Family Trust are nevertheless property of the estate, to the extent of 25% of such amounts.

### D.    UNDER SECTION 541(c), 25% OF DEBTOR'S INTEREST IN THE TRUST DOES NOT ENJOY SPENDTHRIFT STATUS.

Section 541(c)(2) provides that "[a] restriction on a transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable non-bankruptcy law is enforceable in a case under this title." 11 U.S.C. § 541(c)(2).   It is undisputed that trust provisions forbidding the voluntary or involuntary transfer of a beneficiary's interest in trust income or principal are enforceable under California law. See Cal. Prob. Code §§ 15300 - 15301.   However, as the Neuton court explained, "the Probate Code provides that despite such restraints a creditor may obtain an 'order directing the trustee to satisfy all or part of the judgment out of the payment to which the beneficiary is entitled under the trust instrument,' so long as the payment does not 'exceed[] 25% of the payment that otherwise would be made to . . . the beneficiary.'" Id., citing Cal. Prob. Code § 15306.5.   "In other words, the spendthrift restriction fully protects only 75% of the interest in the trust." Id. at 1383.

Section 544(a)(1) of the Bankruptcy Code, sometimes referred to as the "strong arm clause," provides a trustee with the status and power of a hypothetical judicial lien creditor as of the petition date.  11 U.S.C., Section 544(a)(1).   The <u>Neuton</u> court explained that "[b]ecause the trustee enjoys the power of a hypothetical judgment creditor, 11 U.S.C. § 544(a)(1), . . .  the remaining one-fourth is not excluded from the estate pursuant to 11 U.S.C. § 541(c)(2)."  <u>Neuton</u>, at 1383.  "In short, the bankruptcy estate possesses an income interest in one-fourth of the payments due to Neuton (subject to further applicable conditions, see infra.)."  <u>Id.</u> at 1383.  Thus, "The relevance of § 15306.5 is that it removes 25% of the debtor's interest in the trust from traditional spendthrift status" which results in that portion being included within the estate's property.  <u>Id.</u> at 1383.

In <u>In re Kim</u>, the Panel agreed with the lower court in its conclusion that the subject "MTA Plan was a valid spendthrift trust under California law and that Kim's interest in the MTA Plan was excluded from the estate 'except for 25%.'"  <u>Id.</u> at 688.  "[T]he [probate code] has limited the scope of the spendthrift protection."  "[The probate code] section 15306.5 provides that a judgment creditor may obtain an 'order directing the trustee to satisfy all or part of the judgment out of the payment to which the beneficiary is entitled under the [spendthrift] trust instrument, . . .' as long as the payment does not exceed 25 percent of the funds otherwise available to the beneficiary.  See [C.P.C.] § 15306.5 (West 1991)."  <u>Id.</u>

**E.    <u>25% OF DEBTOR'S SHARE OF TRUST INCOME DOES NOT IMPAIR AMOUNTS NECESSARY FOR SUPPORT OF DEBTOR AND SPOUSE</u>.**

**<u>Monthly Income</u>:**

This amount is undisputed.  As explained above, the Chapter 7 Trustee is entitled to receive 25% of the Trust Income Distribution to the extent that such amount is not necessary for the debtor's support.  In order to calculate the amount necessary for support, the trustee has added the debtor's social security benefits and the trust disbursements of Mr. Rens, as Mr. Rens had done on his bankruptcy schedules.  (See Schedule I.)

For purposes of this motion, only the social security benefits of the debtor were used, and the social security benefits of the debtor's wife were not added to the monthly income. There is more than sufficient income generated by the debtor, alone, to cover the expenses of both the debtor and his wife.

**Monthly Support "Expenses":**

The amounts representing the monthly expenses are undisputed. For the two (2) month period from the date of the petition (July 4, 2017), until the debtor moved into his estranged wife's residence in September 2017, the expenses from debtor's Schedule J was used which the debtor confirmed was accurate, except for the $2,000.00 expense described as "Rent." (Undisputed Fact No. 39.) Ironically, the expenses of Mr. Rens during the 2 month period was **$3,685.05** ($5,685.05 - $2,000.00 = $3,685.05) which is higher than after he moved into his estranged wife's residence in September 2017. (See Undisputed Fact Nos. 45, and 46.) Part of the reason is that Mr. Rens claims to have paid a $1,500.00 expense ambiguously described as "Support to Spouse" which inflated his expenses for those two months.

For the period of time after the debtor moved in with his estranged wife in September 2017, the Chapter 7 Trustee used the list of expenses provided by the debtor in his interrogatory responses ($5,848.00 - $2,500.00 = **$3,348.00**) which the debtor confirmed accurately reflected the expenses of the debtor and his wife with the exception of the $2,500.00 expense he described as "Rent." (Undisputed Fact Nos. 44 and 47.) As explained above, no rent expenses existed and none were used in the calculation of the debtor's living expenses. (Undisputed Fact Nos. 42, 44, 45, 46, and 47.)

**Net Income Over Expenses:**

Obviously, this amount reflects the monthly income of the debtor after all support expenses are applied. This is the amount from which the bankruptcy estate is entitled to receive its 25% of the debtor's share of the monthly trust income distributions. Accordingly, the trustee,

Ms. Sparhawk, should be directed to pay the bankruptcy estate an amount equal to 25% of the debtor's share of the Trust Income Distribution, to the extent the net income is available.

The charts evidence that the debtor and his wife have sufficient income for this court to order Ms. Sparhawk to pay the bankruptcy estate the entire 25% of the debtor's share of the trust income distribution as allowed under the probate code.

**Trust Distribution Payment:**

This amount is the mandatory monthly trust income distribution paid to the debtor by Ms. Sparhawk, as the trustee of the Rens Family Trust.  The past amounts are undisputed and all future payments shall be calculated by Ms. Sparhawk in the same manner, until the Trust Termination Date, July 31, 2035.  (See Undisputed Fact Nos. 35, 36 and 37, for years 2017, 2018, and 2019, respectively.)

**25% of Trust Distribution:**

This column is the amount that is property of the estate, and must paid to the Chapter 7 trustee as long as there is sufficient net income over and above the support expenses of the debtor and his wife.  Under the Probate Code, and the Bankruptcy Code, 25% of the debtor's share of the trust income is property of the bankruptcy estate as a matter of law.

Payment to the Net Income Over Expenses to determine whether the full 25% amount could be required to be turned over to the trustee.  In each month, for each year (2017 through 2019), since the bankruptcy petition was filed in July 2017, the full amount of the 25% of Trust Income Distributions constitutes property of the estate and available for payment to the Chapter 7 trustee.

The following is a chart which calculates the available amount of income over the living expenses of Mr. Rens and his wife, for payment to the bankruptcy estate, during the period from September 2017, through December 31, 2017:

| Month | Total Income (7/17-12/31/17) | Total Expenses (7/17-12/31/17) | Net Income Over Expenses (7/17-12/31/17) | Trust Income Distribution Payment (7/17-12/31/17) | 25% of Trust Distribution (7/17-12/31/17) |
|---|---|---|---|---|---|
| Jul | $5,594.15 | $3,685.05 | $1,909.10 | $3,941.25 | $   981.31 |
| Aug | $5,731.65 | $3,685.05 | $2,046.60 | $4,078.75 | $1,019.69 |
| Sep | $5,702.49 | $ 3,348.00 | $2,354.49 | $4,049.59 | $1,012.40 |
| Oct | $5,835.82 | $ 3,348.00 | $2,487.82 | $4,182.92 | $1,045.73 |
| Nov | $5,869.15 | $ 3,348.00 | $2,521.15 | $4,216.25 | $1,054.06 |
| Dec | $5,869.15 | $ 3,348.00 | $2,521.15 | $4,216.25 | $1,054.06 |
| TOTALS: | $34,602.41 | $ 20,762.10 | $13,840.31 | $24,685.01 | $6,167.25 |

The following is a chart which calculates the available amount of income over the living expenses of Mr. Rens and his wife, for payment to the bankruptcy estate, during the period from January 1, 2018, through December 31, 2018:

| Month | Total Income (1/1/18-12/31/18) | Total Expenses (1/1/18-12/31/18) | Net Income Over Expenses (1/1/18-12/31/18) | Trust Income Distribution Payment (1/1/18-12/31/18) | 25% of Trust Distribution (1/1/18-12/31/18) |
|---|---|---|---|---|---|
| Jan | $6,319.75 | $ 3,348.00 | $2,971.75 | $ 4,628.75 | $1,157.19 |
| Feb | $5,907.25 | $ 3,348.00 | $2,559.25 | $ 4,216.25 | $1,054.06 |
| Mar | $5,787.25 | $ 3,348.00 | $2,439.25 | $ 4,096.25 | $1,024.06 |
| Apr | $5,613.92 | $ 3,348.00 | $2,265.92 | $ 3,922.92 | $980.73 |
| May | $5,907.25 | $ 3,348.00 | $2,559.25 | $ 4,216.25 | $1,054.06 |
| June | $5,907.25 | $ 3,348.00 | $2,559.25 | $ 4,216.25 | $1,054.06 |
| Jul | $5,707.25 | $ 3,348.00 | $2,359.25 | $ 4,016.25 | $1,004.06 |
| Aug | $5,807.25 | $ 3,348.00 | $2,459.25 | $ 4,116.25 | $1,029.06 |
| Sep | $6,879.29 | $ 3,348.00 | $3,531.29 | $ 5,188.29 | $1,297.07 |
| Oct | $6,243.27 | $ 3,348.00 | $2,895.27 | $ 4,552.27 | $1,138.07 |

| Nov | $6,143.27 | $ 3,348.00 | $2,795.27 | $ 4,452.27 | $1,113.07 |
| Dec | $6,343.27 | $ 3,348.00 | $2,995.27 | $ 4,652.27 | $1,163.07 |
| **TOTALS:** | **$72,566.27** | **$ 40,176.00** | $32,390.27 | $52,274.27 | **$13,068.56** |

The following is a chart which calculates the available amount of income over the living expenses of Mr. Rens and his wife, for payment to the bankruptcy estate, during the period from January 1, 2019, through December 31, 2019:

| **Month** | **Total Income** (1/1/19-12/31/19) | **Total Expenses** (1/1/19-12/31/19) | **Net Income Over Expenses** (1/1/19-12/31/19) | **Trust Income Distribution Payment** (1/1/19-12/31/19) | **25% of Trust Distribution** (1/1/19-12/31/19) |
|---|---|---|---|---|---|
| Jan | $6,294.26 | $ 3,348.00 | $2,946.26 | $ 4,552.26 | $1,138.07 |
| Feb | $6,294.27 | $ 3,348.00 | $2,946.27 | $ 4,552.27 | $1,138.07 |
| Mar | $6,294.27 | $ 3,348.00 | $2,946.27 | $ 4,552.27 | $1,138.07 |
| Apr | $4,851.77 | $ 3,348.00 | $1,503.77 | $ 3,109.77 | $777.44 |
| May | $5,794.26 | $ 3,348.00 | $2,446.26 | $ 4,052.26 | $1,013.07 |
| June | $5,769.27 | $ 3,348.00 | $2,421.27 | $ 4,027.27 | $1,006.81 |
| Jul | $5,794.26 | $ 3,348.00 | $2,446.26 | $ 4,052.26 | $1,013.07 |
| Aug | $5,774.27 | $ 3,348.00 | $2,426.27 | $ 4,032.27 | $1,008.07 |
| Sep | $5,889.27 | $ 3,348.00 | $2,541.27 | $ 4,147.27 | $1,036.81 |
| Oct | $6,294.27 | $ 3,348.00 | $2,946.27 | $ 4,552.27 | $1,138.07 |
| Nov | $6,294.27 | $ 3,348.00 | $2,946.27 | $ 4,552.27 | $1,138.07 |
| Dec | $6,294.27 | $ 3,348.00 | $2,946.27 | $ 4,552.27 | $1,138.07 |
| **TOTALS:** | $71,638.71 | $40,176.00 | **$31,462.71** | $50,734.71 | **$12,683.69** |

Based upon the above monthly calculations, the following is a calculation of the total amount that has been paid to the debtor above the exemption amount that debtor is permitted to apply toward the monthly Trust Income Disbursements, as of December 31, 2019:

| | | |
|---|---|---|
| | 2017 | $ 6,167.25 |
| | 2018 | $13,068.56 |
| | 2019: | $12,683.69 |
| | | $31,919.50 |
| | | $28,225.00 (Exemption under C.C.P. Section 703.140(b)(5).) |
| Balance owed: | | $ 3,694.50   (over payment to debtor) |
| (As of 12/31/19) | | |

The exemption amount claimed by the debtor in his Schedule C of the Bankruptcy Schedules is $28,225.00, which has already been fully paid to the Debtor.  As of December 31, 2019, the debtor has received funds that should have been paid to the estate in the amount of $3,694.50, in addition to the amounts received during the months of January 2020, through March 2020, and until this court enters its order directing Ms. Sparhawk to pay the Chapter 7 Trustee the portion belonging to the estate.

## CONCLUSION

The Chapter 7 Trustee requests this court to grant this motion for summary judgment, or in the alternative, summary adjudication of issues not in dispute, as follows:

(1)    Under the First Claim for Relief, enter a judicial declaration:

25% of the Debtor's share of the Trust Income Distributions from the Rens Family Trust which have accrued, and will accrue in the future, beginning from the date of the bankruptcy petition until the Rens Family Trust terminates on July 31, 2035, is property of the bankruptcy estate under 11 U.S.C., §541(a).

(2)   Under the Second Claim for Relief, enter a judicial declaration:

    (A)   25% of the Debtor's share in the Trust Property of the Rens Family Trust, also known as the Miramar Park Property, is property of the bankruptcy estate under 11 U.S.C., § 541(a).

    (B)   On July 31, 2035, the Trust Termination Date, the bankruptcy estate is entitled receive 25% of the Debtor's share in the distribution of the Trust Property.

(3)   Under the Third Claim for Relief, enter a judgment directing the debtor, Mr. Rens, to turnover the following:

    The Trust Income Disbursements, to the extent constituting property of the estate that is beyond the debtor's claimed exemption amount, which have been paid to the debtor, Mr. Rens, beginning from the date of the bankruptcy petition until the date of judgment in this case.

(4)   Under the Fourth Claim for Relief, enter a judgment directing the defendant, Ms. Sparhawk, to turnover and/or pay the following:

    (A)   Twenty five percent (25% ) of the debtor's share in the Trust Income Disbursements which are due and paid in the future under the trust agreement, beginning from the date of said order, and continuing until the Trust Termination Date.

    (B)   Twenty five percent (25%) of the debtor's share in the distribution of the Trust Property due upon the Trust Termination Date.

NORTON MOORE & ADAMS
Limited Liability Partnership

Dated: March 5, 2020

/s/ Richard C. Norton
By:_____
Richard C. Norton
Attorneys for Plaintiff Gerald H. Davis, Trustee

BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT