```
Richard C. Norton, Esq. (Cal. Bar No. 135024)
NORTON MOORE & ADAMS, LLP
501 West Broadway, Suite 800
San Diego, California 92101
Telephone: (619) 233-8200
Facsimile: (619) 393-0461

Attorneys for Gerald H. Davis, Chapter 7 Trustee
```

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>ROBERT DUANE RENS,<br><br>    Debtor.<br>_____<br><br>GERALD H. DAVIS, TRUSTEE,<br><br>    Plaintiff,<br><br>v.<br><br><br><br><br>CHERI LEE HUBKA SPARHAWK, as Trustee of the Trust Agreement of Elmer Rens and Jeanne Rens, dated January 6, 1977, also known as theElmer and Jeanne Rens Trust; ROBERT DUANE RENS, an individual;<br><br>    Defendants.<br>_____ | CASE NO. 17-04050-LA7<br><br><br><br><br><br><br><br>Adversary No. 19-90067-LA7<br><br><br><br>**TRUSTEE'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION OF ISSUES NOT IN DISPUTE**<br><br><br>Date:   April 2, 2020<br>Time:   2:00 p.m.<br>Dept.:  Two<br>Honorable Louise D. Adler |

///

///

///

**SUMMARY**

The defendants appear to agree with the legal position of the bankruptcy trustee, in that no more than 25% of the debtor's share of the trust income and trust principal are property of the bankruptcy estate, subject to a claim of exemption and the expenses necessary for the support of the debtor and his wife.  Additionally, all but two of the undisputed material facts are "undisputed" by the defendants.  The main area of disagreement between the bankruptcy trustee and the defendants relates to the impact and legal effect of the death of Mr. Rens upon the estate's interest in the trust income and trust principal which became property of the bankruptcy estate upon the filing of the bankruptcy petition.

According to the defendants, the death of Mr. Rens will terminate the estate's right to receive 25% of the debtor's share of trust income distributions, and the estate's right to 25% of the debtor's share in the trust principal payable upon the Trust Termination Date on July 31, 2035.  The defendants' argument is not supported by the language of the trust agreement and the amendments thereto.  Paragraph 1 D of the Third Amendment to the Rens Family Trust simply provides that one-third of the Trust Income Distributions and one-third of the trust principal shall be paid to Mr. Rens, "or the living issue of a deceased child . . . ."  (See Undisputed Fact Nos. 17 and 22.)  The trust documents do not provide that the one-third attributable to Mr. Rens' share is forfeited or terminated upon the death of Mr. Rens.  That is simply a misreading of the trust language.

The language of the trust does not state that distributions of trust income or trust principal are contingent upon Mr. Rens' survival or that such distributions terminate upon his death. The language "or the living issue of a deceased child" simply identifies the recipient of the debtor's portion, which became 75% of the debtor's share as a result of the bankruptcy filing.

Furthermore, defendants did not, and cannot, cite to any legal authority whereby the property of the estate is forfeited or terminated based upon language referring to the living issue of a deceased beneficiary.  Conversely, the legal authority in the Ninth Circuit is clear that the bankruptcy estate is entitled to receive 25% of the debtor's share of the Trust Income Distributions and 25% of the debtor's share of the Trust Property upon the trust termination.  The

California Supreme Court also confirmed that if at the time of the bankruptcy petition, the distribution of the trust principal is merely "anticipated" or "expected" in the future, then the bankruptcy trustee is entitled to 25% of the such amount, subject to the necessary support needs of the beneficiary.  <u>Carmack</u>, at 857.  Accordingly, 75% of the Trust Income Distributions and 75% of the Distribution of Trust Property upon the termination of the trust remains property of the debtor.

Therefore, the proper reading of the trust agreement results in the conclusion that upon the filing of the bankruptcy petition on July 4, 2017, the bankruptcy estate became the legal owner of 25% of the debtor's share of the Trust Income Distributions and 25% of the debtor's share of the Trust Property upon the trust termination.  Upon the death of Mr. Rens, 75% of the Trust Income and 75% of the Distribution of Trust Property will be tendered to the living issue of Mr. Rens.

**A.     THE TRUST INCOME DISTRIBUTIONS.**

Generally, the defendants agree with the trustee's legal argument and relief sought to the extent concerning the trust income distributions. The following are the areas of agreement and disagreement between the parties:

**1.     Agreement Between the Parties**:

(1) 25% of the debtor's share of the trust income distributions belong to the bankruptcy estate, subject to the payment of the exemption of $28,225.00 (CCP, Section 704.140(b)(5)), and the support expenses of debtor and his wife;

(2) The debtor has received full payment and satisfaction of his claimed exemption of $28,225 (CCP, Section 704.140(b)(5)), from the amounts belonging to the bankruptcy estate; [1]

---

[1]/ Defendants argue that all payments up to November 2019, were applied toward the exemption.  The trustee disagrees with the defendants' calculation and has confirmed by the undisputed amounts received by the debtor through the ***period ending December 31, 2019***, that the debtor received $3,694.50 over and beyond the exemption amount ($31,919.50 - $28,220.00 = $3,694.50). Additionally, after 12/31/19, the debtor continued to receive the 25% share that belongs to the bankruptcy estate, i.e., January 2020, through the present, which will increase the amount the defendants owe to the estate.

|   |   |   |
|---|---|---|
| 1 | (3) | After November 2019, the bankruptcy estate is entitled to receive trust income distributions after support expenses of the debtor and his wife have been paid, up to the amount of 25% of the debtor's share of the distributions; |
| 4 | (4) | From the petition date through the present, the debtor and his wife have sufficient income to pay their support expenses and the full portion of the trust income belonging to the bankruptcy estate (25% of debtor's share); |

**2.    Disagreement by the Parties**:

(1)    The defendants argue that the bankruptcy estate's right to receive 25% of the debtor's share of the trust income distributions is terminated upon the earlier of the death of the debtor, or the Trust Termination Date of July 31, 2035.

(2)    Conversely, the trustee argues that the estate's right to the income distributions is determined as of the date of the petition date. As of the petition date, the estate's right to receive income distributions shall continue until the Trust Termination Date of July 31, 2035, in accordance with the provisions of the Rens Family Trust.

**3.    Legal Argument.**

**(A)    25% of The Trust Income Distribution Becomes Property of the Estate At The Time of The Petition**

Under the Bankruptcy Code, the bankrupt estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Additionally, under § 541(a), "contingent interests are part of the bankruptcy estate." In re Neuton, 922 F.2d 1379, 1382 (9th Cir. 1990).

As stated in the moving papers, Section 541(c)(2) provides that "[a] restriction on a transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable non-bankruptcy law is enforceable in a case under this title." 11 U.S.C. § 541(c)(2). It is undisputed that trust provisions forbidding the voluntary or involuntary transfer of a beneficiary's interest in trust income or principal are enforceable under California law. See Cal. Prob. Code §§

15300 - 15301.   However, as the <u>Neuton</u> court explained, "the Probate Code provides that despite such restraints a creditor may obtain an 'order directing the trustee to satisfy all or part of the judgment out of the payment to which the beneficiary is entitled under the trust instrument,' so long as the payment does not 'exceed[ ] 25% of the payment that otherwise would be made to . . . the beneficiary.'"  <u>Neuton</u>, <u>citing</u> Cal. Prob. Code § 15306.5.  "In other words, the spendthrift restriction fully protects only 75% of the interest in the trust."  <u>Neuton,</u> at 1383.

      Section 544(a)(1) of the Bankruptcy Code, sometimes referred to as the "strong arm clause," provides a trustee with the status and power of a hypothetical judicial lien creditor as of the petition date.  11 U.S.C., Section 544(a)(1).   The <u>Neuton</u> court explained that "[b]ecause the trustee enjoys the power of a hypothetical judgment creditor, 11 U.S.C. § 544(a)(1), . . . the remaining one-fourth is not excluded from the estate pursuant to 11 U.S.C. § 541(c)(2)."  <u>Neuton</u>, at 1383.  "In short, the bankruptcy estate possesses an income interest in one-fourth of the payments due to Neuton (subject to further applicable conditions, see infra.)."  <u>Id.</u> at 1383.  Thus, "The relevance of § 15306.5 is that it removes 25% of the debtor's interest in the trust from traditional spendthrift status" which results in that portion being included within the estate's property.  <u>Id.</u> at 1383.

      In <u>In re Kim</u>, the Panel agreed with the lower court in its conclusion that the subject "MTA Plan was a valid spendthrift trust under California law and that Kim's interest in the MTA Plan was excluded from the estate 'except for 25%.'"  <u>Id.</u> at 688.  "[T]he [probate code] has limited the scope of the spendthrift protection."  "[The probate code] section 15306.5 provides that a judgment creditor may obtain an 'order directing the trustee to satisfy all or part of the judgment out of the payment to which the beneficiary is entitled under the [spendthrift] trust instrument, . . .' as long as the payment does not exceed 25 percent of the funds otherwise available to the beneficiary.  See [C.P.C.] § 15306.5 (West 1991)."  <u>Id.</u>

**(B)** **Only the Debtor's Property (75%) Will be Tendered To the Living Issue Under The Terms of The Trust Agreement**.

It is undisputed by the defendants that "[t]he Rens Family Trust provides that the income arising from the Ground Lease would be distributed equally to the three Beneficiaries (the "Income Distribution"), *until the natural termination of the Ground Lease on July 31, 2035*, described as follows:

> *I direct the Trustee to distribute income from the Ground Lease to Miramar Park to (1) Corinne V. (Rens) Hubka, (2) Lee E. Rens, and (3) Robert D. Rens, or the living issue of a deceased child by right of representation, in equal shares, share and share alike.*
>
> Notwithstanding any provisions to the contrary, the principal of Miramar Park shall not be distributed until the natural termination of the Ground Lease."

(Undisputed Fact No. 17.)

On the date of the bankruptcy petition, the Income Distributions were separated into two categories: (1) property of the bankruptcy estate (25%); and (2) property of the debtor (75%). Defendants do not dispute that as a matter of law, 25% of the future Income Distributions is property of the bankruptcy estate.

Defendants have cited to no legal authority that would cutoff the bankruptcy estate's right to the income from the Ground Lease as provided under the terms of this trust. Furthermore, the terms of the Rens Family Trust do not state that the Income Distribution attributable to Robert Rens will terminate upon his death. Instead the trust provides that the payment of the trust income that would be paid to Mr. Rens, simply be tendered to the living issue of Mr. Rens. The one-third income share is still the same, and the mandatory requirement that the ground lease income be distributed by the trustee is still the same.

The only thing that changes upon the death of Mr. Rens, is that the trustee will be required to send the debtor's property interest, i.e., 75% of the Trust Income Distribution, to the living issue of the debtor. Neither the terms of the trust document, nor any legal authority cited by the defendants, provides a legal basis to take away or remove property of the bankruptcy estate from the administration of the bankruptcy trustee under the Bankruptcy Code.

**B.    THE TRUST PRINCIPAL.**

**(1)    Agreement Between the Parties:**

(1)    25% of the debtor's share of the distribution of the trust property that will occur on the Trust Termination Date belongs to the bankruptcy estate, subject to the necessary support needs of the beneficiary.

**(2)    Disagreement Between the Parties:**

(1)    The defendants argue that the estate's right to receive 25% of the debtor's share of the trust property will terminate if the debtor is deceased before the Trust Termination Date.  Conversely, the Trustee argues that the estate's right to 25% of the trust principal is determined as of the date of the petition date and will not be terminated if the debtor is deceased prior to the Trust Termination Date of July 31, 2035.

**3.    Legal Argument.**

**(A)    25% of The "Anticipated" or "Expected" Distribution of Trust Principal Becomes Property of the Estate At The Time of The Petition**

The defendants conflate the legal effect and significance of principal distributions that are "due and payable" with those that are merely "anticipated" payments in the future.  The difference is significant.  If trust principal is "due and payable," then the bankruptcy trustee, as a hypothetical judgment creditor, would claim 100% of such amount. Carmack v. Reynolds, (2017) 2 Cal. 5th 844, 857.[2]  However, if at the time of the bankruptcy petition, the distribution of the trust principal is merely ***"anticipated"*** or ***"expected"*** in the future, then the bankruptcy trustee is entitled to 25% of the such amount, subject to the necessary support needs of the beneficiary. Id. at 857.

---

[2] "After an amount of trust ***principal*** is ***due and payable*** to the beneficiary under the trust instrument, . . . the court may make an order directing the trust to satisfy the money judgment out of that principal amount."  CPC, Section 15301(b).  Accordingly, the Carmack court confirmed that the bankruptcy trustee would be entitled to 100% of the principal amount that is "due and payable." Carmack, at 857.

"After an amount of principal has become due and payable (but has not yet been distributed), a creditor can petition to have the trustee pay directly to the creditor a sum up to the full amount of that distribution (§ 15301(b)) . . . ." Carmack, at 856. "***If no such distribution is pending*** or if the distribution is not adequate to satisfy a judgment, a general creditor can petition to levy up to **25 percent of the payments expected to be made to the beneficiary**, reduced by the amount other creditors have already obtained and subject to the support needs of the beneficiary and any dependents." Id., at 856-857, citing § 15306.5.

In Carmack v. Reynolds, (2017) 2 Cal. 5th 844, the California Supreme Court concluded that a bankruptcy trustee, standing as a hypothetical judgment creditor, can reach a beneficiary's interest in a trust that pays entirely out of principal in two ways:

> First, the court held that the bankruptcy trustee "may reach up to the full amount of any distributions of principal that are currently due and payable to the beneficiary, unless the trust instrument specifies that those distributions are for the beneficiary's support or education and the beneficiary needs those distributions for either purpose." Id. at 857.
>
> Second, "the bankruptcy trustee can reach up to 25 percent of any ***anticipated payments*** made to, or for the benefit of, the beneficiary, reduced to the extent necessary by the support needs of the beneficiary and any dependents." Id. at 857

Therefore, as stated above, Section 544(a)(1) provides a trustee with the status and power of a hypothetical judicial lien creditor as of the petition date. 11 U.S.C., Section 544(a)(1). The Neuton court explained that "[b]ecause the trustee enjoys the power of a hypothetical judgment creditor, 11 U.S.C. § 544(a)(1), . . . the remaining one-fourth is not excluded from the estate pursuant to 11 U.S.C. § 541(c)(2)." Neuton, at 1383. "In short, the bankruptcy estate possesses an income interest in one-fourth of the payments due to Neuton (subject to further applicable conditions, see infra.)." Id. at 1383. Thus, "The relevance of § 15306.5 is that it removes 25% of the debtor's interest in the trust from traditional spendthrift status" which results in that portion being included within the estate's property. Id. at 1383.

**(B)  Only the Debtor's Property (75%) Will be Tendered To the Living Issue Under The Terms of The Trust Agreement.**

Defendants do not dispute that "[u]pon the termination of the Rens Family Trust on July 31, 2035, the Trust Property shall be distributed, free of trust, to (1) Corinne V. (Rens) Hubka, (2) Lee E. Rens, and (3) Robert D. Rens, or the living issue of a deceased child, by right of representation, in equal shares, share and share alike." (Undisputed Fact No. 22.)

This Undisputed Fact No. 22 is based on Paragraph 1 D of the Third Amendment which provides as follows:

> Upon the natural termination of the Ground Lease, the Miramar Park -Trust A asset shall be distributed outright, free of trust to (1) CORINNE V. (RENS) HUBKA, (2) LEE E. RENS and (3) ROBERT D. RENS or the living issue of a deceased child, by right of representation, in equal shares, share and share alike, subject to the advancements against ROBERT D. RENS' share of the estate as stated hereinafter.

(See Exhibit "7" to Norton Declaration)

Similar to the Trust Income Distributions, on the date of the bankruptcy petition, the expected or anticipated distribution of Trust Property were separated into two categories: (1) property of the bankruptcy estate (25%); and (2) property of the debtor (75%). Defendants do not dispute that as a matter of law, 25% of the future Distribution of Trust Property is property of the bankruptcy estate.

Defendants have cited to no legal authority that would cutoff the bankruptcy estate's right to the Trust Property as provided under the terms of this trust. Furthermore, the terms of the Rens Family Trust do not state that the Distribution of Trust Property attributable to the Robert Rens portion will terminate upon his death. Instead, the trust provides that the Trust Property will be distributed to the living issue of Mr. Rens in the event Mr. Rens is deceased at that time. The one-third share is still the same, and the mandatory requirement that Trust Property be distributed by the trustee upon the Trust Termination Date is still the same.

The only thing that changes upon the death of Mr. Rens, is that the trustee will be required to send the debtor's property interest, i.e., 75% of the Trust Property, to the living issue of the

debtor. Neither the terms of the trust document, nor any legal authority cited by the defendants, provides a legal basis to take away or remove property of the bankruptcy estate from the administration of the bankruptcy trustee under the Bankruptcy Code.

### C. ALL MATERIAL FACTS ARE UNDISPUTED.

All of the plaintiff's facts in support of the Trustee's motion for summary judgment are undisputed with the exception of Undisputed Fact Nos. 45 and 46. Thus all recitations of the trust agreements, all calculations of income disbursements, debtor's monthly income and expenses necessary for the debtor's support, are undisputed.

The purported disputed facts are disputed by nothing more than argument from debtor's counsel in an attempt to justify the debtor's misrepresentation of the rent expense on the bankruptcy schedules and then later in his verified responses to interrogatories, without the support of actual evidence. The debtor does not deny that he misrepresented the rent expense not once, but twice, for what appears to be for the obvious purpose of inflating his monthly support expenses.

This is not the debtor's only concealment and misrepresentation to the court and the bankruptcy trustee in this case. The debtor also concealed the existence of his primary bank account at Citibank until discovery in this adversary proceeding, which he opened just months before his petition and used to receive his trust income distributions.

Furthermore, the debtor withdrew, and continues to withdraw, most of his trust income payments in the form of cash each month which of course renders the disposition and location of said funds untraceable. (See Rens Deposition: pp. 174:4 - 175:8.) The debtor has not provided any accounting of the cash expenditures and states that said cash is used for his living expenses. This vague explanation appears to be less than forthcoming in light of the circumstances. For example, just last year (2019), the debtor and his wife traveled to France, Germany, Switzerland, and Austria, on a month long vacation, purportedly spending "around $16,000." (See Rens Deposition: p. 69:15-16; and see pp. 62-69.) Shortly thereafter, in December 2019, the debtor and his wife traveled on a 15 day cruise along the Mexican coastline though the Panama Canal

and the Carribean, flying back from Miami. (Rens Deposition: pp. 62:22 - 63:15.) The debtor testified that he and his wife saved up money in their bank accounts, but it is still unclear how these trips were funded. (Rens Deposition: p.66:11-12.)

Additionally, the debtor misled the trustee and his counsel for over two years by turning over trust documents and amendments thereto, which represented that the debtor owed over $600,000 to the Rens Family Trust for advancements. The trust documents represented that said advancements would have to be repaid from the eventual distribution of the trust property upon the Trust Termination Date. In actuality, the debtor concealed from the bankruptcy trustee the fact that no such amounts were owed. Debtor concealed the document entitled "Confirmation of Satisfaction In Full of Advancements of Robert D. Rens" which confirmed that the advances from the Rens Family Trust in excess of $600,000, were in fact repaid by the debtor and was no longer owed. (Exh. "8" to Norton Decl.) Moreover, the debtor knew that the bankruptcy trustee erroneously believed the advancements of over $600,000 was still owed because it was reflected in the trustee's settlement proposal tendered to the debtor on May 24, 2019. The trustee's lack of knowledge of this significant fact was never corrected by the debtor or his attorneys until the recent disclosure of the Confirmation of Satisfaction document during discovery in this adversary proceeding, more than 2 years after the petition was filed.

                                        NORTON MOORE & ADAMS
                                        Limited Liability Partnership

                                            /s/ Richard C. Norton
Dated: March 26, 2020                      By:_____
                                            Richard C. Norton
                                            Attorneys for Plaintiff Gerald H. Davis,
                                            Trustee